UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN R. ERICKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>JERNIGAN CAPITAL, INC., JOHN A. GOOD, MARK O. DECKER, JAMES DONDERO, HOWARD A. SILVER, HARRY J. THIE, and REBECCA OWEN,<br><br>                Defendants. | Civil Action No.<br><br>CLASS ACTION<br><br><br><br>COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff John R. Erickson ("Plaintiff") by his undersigned attorneys, alleges upon personal knowledge as to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other (now former) public holders of the common stock of Jernigan Capital, Inc. ("Jernigan" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" and, together with Jernigan, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n.

2. This action arises from the acquisition of Jernigan by affiliates of NexPoint Advisors, L.P. ("NexPoint"). On August 3, 2020, the Company announced it had entered a merger agreement with NexPoint, pursuant to which the Company's common stockholders would receive $17.30 in cash per share (the "Merger").

3. On August 20, 2020, the Company filed a preliminary proxy statement concerning the Merger on Form PREM14A with the United States Securities and Exchange Commission ("SEC"). On September 23, 2020, the Company filed its definitive proxy statement concerning the Merger on Form DEFM14A with the SEC. On October 16, 2020, the Company supplemented the definitive proxy in a Form 8-K filing with the SEC. (The PREM14A, DEFM14A, and Form 8-K, are, together herein, the "Proxy.")

4. The Proxy was materially false and misleading in violation of Section 14(a) because, *inter alia*: (i) the Proxy failed to disclose a highly material $300 million preferred equity transaction carried out in connection with the Merger; (ii) the Proxy included financial projections directly at odds with projections used in a recent transaction benefitting management and did not adequately

disclose information material to understanding that discrepancy; and (iii) the Proxy's assertion of good-faith reliance on a financial advisor's fairness opinion to justify the unfair $17.30 Merger consideration is implausible and untrue.

5. On October 26, 2020, pursuant to the materially false and misleading Proxy, the Company held a special meeting of stockholders to vote on the Merger. At this meeting, pursuant to the materially false and misleading Proxy, a majority of stockholders voted to approve the Merger. The preparation and dissemination of the materially false and misleading Proxy induced stockholders' vote in favor of the Merger and caused substantial harm to Plaintiff and Jernigan's other stockholders. After the stockholder vote, the Merger closed on November 6, 2020.

6. This action seeks damages on behalf of Jernigan's former stockholders as a result of Defendants' materially misleading Proxy disseminated in contravention of Sections 14(a) and 20(a) of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under Section 27 of the Exchange Act, 15 U.S.C. §78aa, as well as under 28 U.S.C. §1331.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, as well as under 28 U.S.C. §1391(b). A substantial number of the acts and omissions giving rise to the claims at issue occurred in this District.

9. In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## PARTIES

10. Plaintiff was at all relevant times a stockholder of Jernigan as reflected in the

attached certification.

11. Defendant Jernigan is a real estate investment trust ("REIT") focused on self-storage real estate properties. The Company is incorporated in Maryland and headquartered in Tennessee. The Company's common stock traded on the NYSE under the symbol "JCAP."

12. Defendant John A. Good was Jernigan's Chief Executive Officer ("CEO") and Chairman and was a director of Jernigan at all relevant times.

13. Defendant Mark O. Decker was a director of Jernigan at all relevant times.

14. Defendant James Dondero was a director of Jernigan at all relevant times.

15. Defendant Howard A. Silver was a director of Jernigan at all relevant times.

16. Defendant Harry J. Thie was a director of Jernigan at all relevant times.

17. Defendant Rebecca Owen was a director of Jernigan at all relevant times.

18. Defendants Good, Decker, Dondero, Silver, Thie, and Owen are, collectively herein, the "Board" or the "Individual Defendants" and, with Jernigan, the "Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all persons who owned shares of Jernigan common stock at the time of the Merger, excluding defendants and their affiliates (the "Class"). This action is properly maintainable as a class action, including for the reasons set forth below.

20. The Class is so numerous that joinder of all members is impracticable. According to the Proxy, there were over 23,000,000 shares of Jernigan common stock issued and outstanding, likely held by hundreds or thousands of persons and entities throughout the country.

21. There are questions of law and fact that are common to the Class, including:

 (a) whether Defendants violated Section 14(a) of the Exchange Act by misrepresenting or omitting material information in the Proxy;

(b) whether the members of the Board are liable as "controlling persons" under Section 20(a) of the Exchange Act; and

(c) whether Plaintiff and the other members of the Class were injured as a result of Defendants' misconduct.

22. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff is not subject to any atypical claims or defenses.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would: (i) establish incompatible standards of conduct for Defendants; or (ii) as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, substantially impairing or impeding their ability to protect their interests.

**SUBSTANTIVE ALLEGATIONS**

25. Defendants solicited Jernigan stockholders' vote in favor of the Merger by means of the materially false and misleading Proxy. Among other things, the Proxy failed to disclose a highly material $300 million preferred equity transaction carried out in connection with the Merger; failed to reconcile its pessimistic financial projections with optimistic projections supporting a recent transaction that benefitted management; and asserted good faith reliance on a fairness opinion that was implausible and materially misleading under the circumstances.

26. The Proxy stated the Board's recommendation in favor of the Merger, including the unfair $17.30 per share Merger consideration:

> Our board of directors has unanimously approved the merger agreement and declared the merger agreement and the transactions contemplated by the merger agreement, including the merger, to be advisable and in the best interests of Jernigan Capital, Inc. and our stockholders. **Our board of directors recommends that you vote "FOR" the approval of the merger and the other transactions contemplated by the merger agreement.**

(Emphasis in original.)

27. The Proxy attempted to justify the Merger, including the unfair $17.30 per share Merger consideration, by highlighting alleged "headwinds" in the self-storage sector, including the "continued headwind of rental rate compression due to a prolonged cycle of new development and elevated levels of self-storage supply in its markets"; "continued declines in self-storage industry fundamentals resulting from elevated new supply"; and "uncertainty regarding the expected scope and duration of the impacts of COVID-19."

28. Defendants disclosed the following financial projections in the DEFM14A to solicit stockholder approval of the Merger:

**Summary of the 2020 through 2024 Projected Financial Information**

| | Projections[1] | | | | |
|---|---|---|---|---|---|
| | Twelve Months Ending December 31 | | | | |
| | 2020 | 2021 | 2022 | 2023 | 2024 |
| **Income Statement** | | | | | |
| Owned Net Operating Income[2] | $ 9.6 | $ 21.6 | $38.5 | $51.4 | $58.0 |
| EBITDA[3] | $ 24.0 | $ 28.4 | $40.3 | $48.7 | $53.6 |
| Net Income | $(79.2) | $ (1.9) | $15.3 | $23.9 | $30.5 |
| Unlevered Free Cash Flow[4] | $ 38.3 | $(43.4) | $23.6 | $37.1 | $53.4 |
| Funds From Operations ("FFO")[5] | $(52.2) | $ 0.60 | $23.7 | $37.0 | $43.4 |
| FFO / Share[6] | $(2.08) | $ 0.02 | $0.62 | $0.93 | $1.07 |

(1) Dollar amounts in millions, except per share values.
(2) Owned Net Operating income is defined as owned operating revenue less owned property expenses.
(3) EBITDA represents the Company's Owned Net Operating Income, plus interest income, other income and joint venture income (excluding depreciation and amortization), less general and administrative expenses, management fees and incentive fees.
(4) Unlevered Free Cash Flow represents EBITDA less stock-based compensation expenses, acquisition and capital additions, interest accrual adjustment and cash funding, plus loan repayments and external sales and plus other non-cash expenses.
(5) FFO represents the Company's Net Income plus depreciation and amortization (including joint ventures), less total fair market value gain / (loss) (including joint ventures) and realized gain.
(6) FFO / Share is calculated as FFO divided by the projected number of weighted average shares outstanding, as adjusted for the dilutive impact of share-based compensation ((i) 25.1 million shares outstanding as of 2020, (ii) 31.8 million shares outstanding as of 2021, (iii) 38.1 million shares outstanding as of 2022, (iv) 39.7 million shares outstanding as of 2023 and (v) 40.6 million shares outstanding as of 2024).

29. Defendants issued the following supplemental financial disclosures on Form 8-K to solicit stockholder approval of the Merger:

Summary of the 2020 through 2024 Projected Financial Information

| | Projections[1] Twelve Months Ending December 31 | | | | |
|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 |
| **Income Statement** | | | | | |
| Owned Property Revenue | $ 22.0 | $ 42.3 | $ 64.9 | $ 80.2 | $ 88.8 |
| Owned Property Expense | $ (12.3) | $ (20.7) | $ (26.5) | $ (28.9) | $ (30.8) |
| Owned Net Operating Income[2] | $ 9.6 | $ 21.6 | $ 38.5 | $ 51.4 | $ 58.0 |
| Interest Income | $ 24.0 | $ 15.0 | $ 10.3 | $ 6.1 | $ 4.7 |
| Other Income | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.3 |
| JV Income (Excluding Depreciation and amortization) | $ 0.2 | $ 0.2 | $ 0.3 | $ 0.3 | $ 0.3 |
| General & Administrative Expense | $ (8.9) | $ (8.6) | $ (8.9) | $ (9.3) | $ (9.7) |
| Management Fee | $ (1.2) | -- | -- | -- | -- |
| Incentive Fee | -- | -- | -- | -- | -- |
| EBITDA[3] | $ 24.0 | $ 28.4 | $ 40.3 | $ 48.7 | $ 53.6 |
| Total Fair Market Value Gain / (Loss) (including Joint Ventures) | $ (8.1) | $ 19.4 | $ 13.7 | $ 8.2 | $ 7.3 |
| Gains from Dispositions / Sales | $ 0.6 | -- | -- | -- | -- |
| Preferred Distributions | $ (19.2) | $ (13.6) | $ (2.8) | -- | -- |
| Stock Based Compensation | $ (2.3) | $ (2.1) | $ (1.9) | $ (1.8) | $ (1.8) |
| Interest Expense | $ (12.1) | $ (12.1) | $ (11.9) | $ (9.8) | $ (8.4) |
| Depreciation & Amortization (including Joint Ventures) | $ (19.4) | $ (21.9) | $ (22.1) | $ (21.3) | $ (20.2) |
| Corporate Depreciation & Amortization | $ (0.1) | $ (0.1) | $ (0.1) | $ (0.1) | $ (0.1) |
| Restructuring Charges | $ (42.6) | -- | -- | -- | -- |
| Net Income[4] | $ (79.2) | $ (1.9) | $ 15.3 | $ 23.9 | $ 30.5 |
| EBITDA | $ 24.0 | $ 28.4 | $ 40.3 | $ 48.7 | $ 53.6 |
| Stock Based Compensation | $ (2.3) | $ (2.1) | $ (1.9) | $ (1.8) | $ (1.8) |
| Acquisitions & Capital Additions, interest accrual adjustment and cash funding | $ (30.6) | $ (77.2) | $ (16.6) | $ (11.6) | $ (0.2) |
| Loan Repayments and External Sales | $ 0.0 | $ 5.4 | $ 0.0 | $ 0.0 | $ 0.0 |
| Other Non-Cash Expenses | $ 3.3 | $ 2.1 | $ 1.8 | $ 1.8 | $ 1.8 |
| Restructuring Costs & Management Fees | $ 43.8 | -- | -- | -- | -- |
| Unlevered Free Cash Flow[5] | $ 38.3 | $ (43.4) | $ 23.6 | $ 37.1 | $ 53.4 |
| Net Income | $ (79.2) | $ (1.9) | $ 15.3 | $ 23.9 | $ 30.5 |
| Depreciation & Amortization (including Joint Ventures) | $ 19.4 | $ 21.9 | $ 22.1 | $ 21.3 | $ 20.2 |
| Total Fair Market Value Gain / (Loss) (including Joint Ventures) | $ 8.1 | $ (19.4) | $ (13.7) | $ (8.2) | $ (7.3) |
| Realized Gain | $ (0.6) | -- | -- | -- | -- |
| Funds From Operations ("FFO")[6] | $ (52.2) | $ 0.6 | $ 23.7 | $ 37.0 | $ 43.4 |
| FFO / Share[7] | $ (2.08) | $ 0.02 | $ 0.62 | $ 0.93 | $ 1.07 |

(1) Dollar amounts in millions, except per share values.
(2) Owned Net Operating income is defined as owned operating revenue less owned property expenses.
(3) EBITDA represents the Company's Owned Net Operating Income, plus interest income, other income and joint venture income (excluding depreciation and amortization), less general and administrative expenses, management fees and incentive fees.
(4) Net Income represents EBITDA plus total fair market value gain / (loss) (including joint ventures) plus gains from dispositions / sales, less preferred distributions, stock based compensation, interest expense, depreciation and amortization (including joint ventures), corporate depreciation and amortization and restructuring charges.
(5) Unlevered Free Cash Flow represents EBITDA less stock-based compensation expenses, acquisition and capital additions, interest accrual adjustment and cash funding, plus loan repayments and external sales and plus other non-cash expenses.
(6) FFO represents the Company's Net Income plus depreciation and amortization (including joint ventures), less total fair market value gain / (loss) (including joint ventures) and realized gain.
(7) FFO / Share is calculated as FFO divided by the projected number of weighted average shares outstanding, as adjusted for the dilutive impact of share-based compensation ((i) 25.1 million shares outstanding as of December 31, 2020, (ii) 31.8 million shares outstanding as of December 31, 2021, (iii) 38.1 million shares outstanding as of December 31, 2022, (iv) 39.7 million shares outstanding as of December 31, 2023 and (v) 40.6 million shares outstanding as of December 31, 2024).

30. The Proxy specifically identified the fairness opinion issued by Jefferies LLC ("Jefferies") as an affirmative reason for the Board's support of the Merger. According to the Proxy, one "material factor[] which the Board viewed as supporting its decision to approve" the Merger was:

> [T]he fact that Jefferies delivered its oral opinion, subsequently confirmed in writing, that, as of August 2, 2020 and based upon and subject to the various assumptions made, procedures followed, matters considered and limitations on the review undertaken set forth in the written opinion, the merger consideration to be received

by holders of Company common shares pursuant to the merger agreement was fair from a financial point of view to such holders.

31. The Proxy specified that "the financial projections [provided to Jefferies and the Board] were prepared on a reasonable basis reflecting management's best available estimates and judgments regarding our future financial performance at the time they were prepared." The Proxy likewise stated that, in issuing its fairness opinion, Jefferies "reviewed certain information furnished to Jefferies by the Company's management, including financial forecasts and analyses, relating to the business, operations and prospects of the Company." The Proxy stated that "[t]he Company informed Jefferies . . . and Jefferies assumed, that such financial forecasts were reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of the management of the Company as to the future financial performance of the Company."

32. The Proxy was materially false and misleading in several key respects.

33. *First*, the Proxy failed to disclose a material $300 million preferred equity offering carried out in connection with the Merger. Specifically, as the Company would only announce after the stockholder vote and after the Merger closed, the Company had entered into an agreement with Extra Space Storage, Inc. ("Extra Space") – another self-storage company – for Extra Space to help finance the Merger through a $300 million investment in Jernigan preferred stock.

34. The Proxy made no disclosure about any such transaction. The stockholder vote on the Merger occurred on October 26, 2020 and the Merger closed on November 6, 2020 with no disclosure of the Extra Space transaction.

35. Thereafter, on November 9, 2020, the Company issued its quarterly report on Form 10-Q for the quarter ended September 30, 2020. The Form 10-Q contained the first disclosure of the $300 million Extra Space investment. As the Form 10-Q stated:

> On November 6, 2020, the Company entered into a Securities Purchase Agreement (the "Securities Purchase Agreement") with Extra Space Storage, LP ("Extra Space")

under which Extra Space purchased 2,000 shares of the Company's newly designated Series A Preferred Stock (the "Series A Preferred Stock"), 100,000 shares of the Company's newly designated Series B Preferred Stock (the "Series B Preferred Stock", and together with the Series A Preferred Stock, the "Preferred Stock") and 100 units of the Operating Company's newly designated Series C Units, for an aggregate purchase price of $300 million.

[…]

The Company used the net proceeds from the . . . Preferred Stock to finance the transactions contemplated by the Mergers[.]

36.   Extra Space likewise first announced its $300 million investment on November 9, 2020, after stockholders had already voted and the Merger closed. As Extra Space stated:

Extra Space . . . announced today it made a $300 million investment in preferred stock of Jernigan Capital, Inc. ("JCAP") ***in connection with*** the acquisition of JCAP by affiliates of NexPoint Advisors, L.P. The previously announced acquisition was approved by JCAP stockholders on October 26, 2020, and closed on Friday, November 6, 2020.

(Emphasis added.)

37.   Information concerning the $300 million Extra Space transaction was highly material to investors and its complete omission from the Proxy rendered the Proxy materially false and misleading.

38.   *Second*, the Proxy disclosed financial projections directly at odds with projections used in a recent transaction that benefitted management, and omitted material information necessary to reconcile and understand the discrepancy between the Company's two sets of projections. On February 20, 2020, the Company conducted a stockholder vote pursuant to which stockholders approved Jernigan's internalization of its then-external manager, JCAP Advisors LLC (the "Internalization"). Jernigan closed the Internalization transaction that same day.

39.   The financial projections disclosed in the Proxy reflect and imply a significant downturn in Jernigan's business and financial performance in comparison to the earlier projections underlying the Internalization. The Proxy fails to disclose sufficient information to understand or

- 8 -

explain this discrepancy, and fails to otherwise reconcile the two sets of financial projections. Notably, the financial projections underlying each of the Merger and the Internalization were, in each instance, advantageous to Company management – *i.e.*, Company management benefited from the optimistic projections used to negotiate the Internalization terms, and then benefited from the pessimistic projections underlying the Merger, which triggered additional "earn-out" consideration to management.

40. Along similar lines, the Proxy reflected a downturn in financial performance inconsistent with the Company's statements in the lead-up to the Merger. For example, the Proxy described difficulties associated with COVID-19. But as recently as May 8, 2020, Defendant Good – the Company's Chairman and CEO – described the multiple "silver linings" caused by the pandemic. As Defendant Good explained, "the pandemic is certainly causing change in everyone's lives and with change come[s] self-storage usage."

41. The Proxy likewise justified the unfair Merger price based on supposed excess supply in the self-storage sector due to the property development cycle. In contrast to this claim, Defendant Good earlier explained that another "silver lining" of COVID-19 was that it had brought an "end [to] the development cycle." As he stated: "Development in already overbuilt markets is likely to either be deferred for the long term or abandoned all together [sic] for a host of reasons caused related to or accelerated by the COVID-19 pandemic."

42. Defendant Good succinctly summarized the impact of the pandemic on Jernigan's performance: "JCAP was built for a scenario like this," he said, and the Company was "positioned . . . not only to survive the pandemic and the resulting dramatic economic downturn, but also to thrive as things recover." The Proxy's suddenly pessimistic financial projections are irreconcilable with these statements.

43. Indeed, the Proxy expressly described the supposed "headwinds" facing the self-storage sector. In contrast, the CEO of Extra Space – which invested an undisclosed $300 million in connection with the Merger – stated on November 4, 2020 that the "storage sector experienced a number of tailwinds in the third quarter." The Proxy's failure to reconcile its negative portrayal of the Company's business with this reality rendered it materially false and misleading.

44. *Third*, the Proxy's assertions of good faith reliance by the Board on Jefferies's fairness opinion are materially false and misleading. As described above, Defendants had two sets of financial projections – optimistic projections developed in connection with the February 2020 Internalization and pessimistic projections used only for the Merger. The Proxy raises an inference that Defendants provided only the pessimistic projections to Jefferies, in effect engineering a fairness opinion supporting the unfairly-low Merger consideration. In this context, the Proxy's assertions of reliance on the Jefferies fairness opinion are implausible and materially false and misleading.

45. Moreover, the Proxy fails to disclose that the pessimistic projections underlying the Merger and fairness opinion were, at best, unreliable compared to the earlier Internalization projections. On May 8, 2020, the Company's then-Chief Financial Officer withdrew full-year guidance because of uncertainty related to the pandemic. As she stated: "Looking forward with the general uncertainty and lack of visibility with respect to the impact of the COVID pandemic and economic recovery, we are withdrawing our EPS and adjusted EPS guidance ranges for the full year." If there was insufficient visibility to project one year of earnings, there was obviously insufficient visibility for the Proxy's pessimistic four-year financial projections to be reliable. The Proxy's failure to disclose that the financial projections given Jefferies were unreliable – particularly compared to the reliable Internalization projections not provided – demonstrates that the Proxy's claims of good faith reliance on Jefferies's fairness opinion were materially false and misleading.

## COUNT I

### Violation of Section 14(a) of the Exchange Act
### Against All Defendants

46. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

47. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

48. Defendants disseminated the false and misleading Proxy as specified above. The Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. Defendants prepared, reviewed, and/or disseminated the Proxy. The Proxy misrepresented and/or omitted material facts, as detailed above. Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

50. As stated herein, the Proxy contained untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder; the Proxy was an essential link in the consummation of the Merger.

51. As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Proxy, Plaintiff and the Class were induced to vote their shares and

accept inadequate consideration in the Merger.

52. The false and/or misleading Proxy used to obtain stockholder approval of the Merger deprived Plaintiff and the Class of their right to a fully informed stockholder vote in connection therewith and the full and fair value for their Jernigan shares.

53. At all times relevant to the dissemination of the materially false and/or misleading Proxy, Defendants were aware of and/or had access to the true facts concerning Jernigan's value, which was far greater than the consideration that stockholders received. Thus, as a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to obtain stockholder approval of and thereby consummate the Merger, Plaintiff and the Class have suffered damage and actual economic losses (*i.e.*, the difference between the price Jernigan stockholders received and Jernigan's true value at the time of the Merger) in an amount to be determined at trial.

54. The omissions and false and misleading statements in the Proxy were material in that a reasonable stockholder would have considered them important in deciding how to vote on the Merger. A reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

55. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Plaintiff and the Class are entitled to relief.

## COUNT II

**Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

56. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

57. Section 20(a) of the Exchange Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of" the Exchange Act or any of the rules promulgated thereunder. Such "controlling persons" are "liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

58. By reason of the allegations herein, Defendants violated Section 14(a) of the Exchange Act by issuing and publishing the Proxy, which contained untrue statements of material fact concerning the Merger, and omitted material facts concerning the Merger necessary in order to make the statements in the Proxy not misleading.

59. The Individual Defendants were controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act.

60. The Individual Defendants, by virtue of their positions as officers and/or directors of the Company, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs, and therefore exercised general control over the Company's operations.

61. The Individual Defendants, by virtue of their positions as officers and/or directors of the Company, had the power or ability to control the issuance, publication, and contents of the Proxy. The Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.

62. By reason of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act and Plaintiff and the Class are entitled to relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Declaring that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Declaring that the Proxy was materially false and misleading in violation of Section 14(a) of the Exchange Act;

C. Awarding Plaintiff and the members of the Class compensatory and/or rescissory damages against the Defendants;

D. Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs; and

E. Awarding such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: November 13, 2020                    ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                            CHAD JOHNSON
                                            NOAM MANDEL
                                            DESIREE CUMMINGS

                                            /s/ Noam Mandel
                                            _____
                                            NOAM MANDEL

                                            420 Lexington Avenue, Suite 1832
                                            New York, NY 10170
                                            Telephone: 212/693-1058
                                            chadj@rgrdlaw.com
                                            noam@rgrdlaw.com
                                            dcummings@rgrdlaw.com

                                            *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

JOHN R. ERICKSON ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing. Plaintiff has authorized the filing of a motion for appointment as lead plaintiff.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff held 155,000 shares of Jernigan Capital stock as of September 11, 2020 and was a holder of Jernigan Capital stock at all relevant times.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of November, 2020.

_____
JOHN R. ERICKSON