UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN R. ERICKSON, *Individually and on Behalf of All Others Similarly Situated*,

Plaintiff,

-against-

JERNIGAN CAPITAL, INC. et al.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   8/1/2022

1:20-cv-9575 (MKV)

OPINION & ORDER
DENYING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Lead Plaintiff John Erickson brings this putative class action, asserting claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, alleging that Defendants Jernigan Capital, Inc. and members of its board of directors issued materially false and misleading proxy disclosures to induce stockholders to approve a "going private" transaction at an unfairly low price. Before the Court is Defendants' motion to dismiss the Amended Complaint [ECF No. 43]. For the reasons set forth below, the motion is DENIED.

I.  BACKGROUND[1]

Jernigan Capital, Inc. ("JCAP") was a publicly-traded real estate investment trust ("REIT") focused on self-storage [ECF No. 36 ("Cmpl.") ¶ 2]. Non-party NexPoint Advisors, L.P. ("NexPoint"), an investment firm, held some of the JCAP stock, and the president of NexPoint held one of the six seats on the board of directors of JCAP. Cmpl. ¶¶ 16, 24. On November 6, 2020, NexPoint acquired all of JCAP's outstanding publicly traded stock, and that transaction resulted in a privately-held entity named NexPoint Storage Partners ("NSP"), which has three directors. Cmpl. ¶¶ 2, 16.

---

[1] The facts are taken from the Amended Complaint [ECF No. 36 ("Cmpl.")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

Lead Plaintiff alleges that JCAP shareholders approved this "going private" transaction at an unfairly low price based on materially misleading proxy disclosures. In particular, at the time of the shareholder vote, the proxy materials represented that a principal reason for the proposed acquisition by NexPoint at the proposed price was "the limited interest other REITs operating in the self-storage sector would likely have in acquiring [JCAP's] portfolio." Cmpl. ¶ 7. Meanwhile, JCAP failed to disclose, until after the shareholders had voted and the transaction had closed, that a leading self-storage REIT named Extra Space Storage, Inc. ("Extra Space") was participating in the transaction through a $300 million investment, which accounted for one third of the approximate $900 million value of the entire transaction. Cmpl. ¶¶ 3, 5. In exchange for its investment, Extra Space received the right to acquire and operate JCAP's portfolio, as well as one of three seats on the board of the surviving company, NSP. Cmpl. ¶¶ 3, 7, 27.

The timeline is important. The definitive proxy statement was filed on September 23, 2020, and JCAP filed supplemental disclosures on October 16, 2020. Cmpl. ¶ 2 n.1. JCAP stockholders voted to approve NexPoint's acquisition of JCAP at $17.30 per share on October 26, 2020². Cmpl. ¶¶ 9, 26. As of that time, the proxy materials included the statement about "the limited interest other REITs operating in the self-storage sector would likely have in acquiring [JCAP's] portfolio." Cmpl. ¶ 7. On November 6, 2020, the acquisition closed. Cmpl. ¶ 26. On November 9, 2020, JCAP disclosed, for the first time, a $300 million deal with Extra Space, which had also closed on November 6, 2020, the same day as the acquisition. Cmpl. ¶ 27. In public statements on November 9, 2020 and November 16, 2020, Extra Space described its $300 million investment as an "investment in the acquisition of Jernigan Capital" and an "investment made as part of NexPoint's acquisition of Jernigan Capital." Cmpl. ¶¶ 29, 30.²

---

² Winston & Stawn, NexPoint's counsel for the acquisition and defense counsel in this case, also posted on its website that the transaction "includ[ed]" $300 million from Extra Space. Cmpl. ¶ 31.

2

Lead Plaintiff initiated this case by filing a complaint, which he later amended, asserting claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 [ECF Nos. 1, 36]. Defendants move to dismiss the Amended Complaint for failure to state a claim [ECF Nos. 43, 44 ("Def. Mem."), 45, 49, 54]. Lead Plaintiff opposes that motion [ECF Nos. 48 ("Pl. Opp."), 52]. On May 20, 2022, the Court held oral argument on the motion to dismiss.

## II.     LEGAL STANDARDS

### A. Pleading Standards

On a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d. Cir. 2011). The Court also "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, a complaint only needs to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Securities fraud claims are subject to heightened pleading requirements. *ATSI Commc'ns, Inc.*, 493 F.3d at 99. Under Rule 9(b) of the Federal Rules of Civil Procedure, any party alleging a fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104–

3

67, 109 Stat. 737 (codified in scattered sections of 15 U.S.C.), where a plaintiff's claims depend upon allegations that the defendant made an untrue statement of material fact or omitted a material fact necessary to make a statement not misleading, the plaintiff "shall specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1); *Wilson*, 671 F.3d at 128.

### B. Elements of Plaintiff's Claims

To state a claim under Section 14(a) and Rule 14a-9 promulgated thereunder, a plaintiff must allege that (1) a proxy statement contained a material misrepresentation or omission, which (2) caused the plaintiff loss, and (3) the proxy solicitation was an essential link in accomplishing the proposed transaction. *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004). A fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999). The plaintiff must allege not only "transaction causation," but also "loss causation." *Id.* at 137. To state a claim under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (quoting *ATSI Commc'ns, Inc.*, 493 F.3d at 108).

### III.   DISCUSSION

Defendants ask the Court to dismiss the Amended Complaint "in its entirety." Def. Mem. at 25. With respect to Lead Plaintiff's claim under Section 14(a), Defendants argue only that (i) the Amended Complaint fails to allege any material misrepresentation or omission, and (ii) the Amended Complaint fails to allege loss causation. Defendants then assert in passing that the Court

4

should dismiss the claim under Section 20(a) based on Lead Plaintiff's supposed failure to plead a primary violation of Section 14(a). *Id*. The Court has carefully reviewed the Amended Complaint, the documents incorporated into the Amended Complaint, the parties' submissions in connection with the motion to dismiss, and the authorities cited at the oral argument. Defendants' arguments are wholly unpersuasive.

### A. The Amended Complaint Adequately Alleges a Material Omission

Lead Plaintiff plausibly and specifically alleges both that Defendants' proxy disclosures were materially misleading and why they were materially misleading. Lead Plaintiff alleges that the proxy disclosures for JCAP's proposed acquisition by NexPoint at $17.30 per share contained a statement that other self-storage REITs had "limited interest" in JCAP's portfolio and omitted any information about the large, simultaneous deal with Extra Space, a leading self-storage REIT. Cmpl. ¶¶ 3, 7. Pl. Opp. at 3, 18–19. Specifically, Lead Plaintiff plausibly alleges that the proxy disclosures "portrayed . . . a transaction that was materially different [from] the one Jernigan carried out," which transaction included "Extra Space's $300 million participation" in exchange for "management and first offer rights concerning the Company's real estate assets." Cmpl. ¶ 33. Lead Plaintiff further plausibly alleges that, had the Extra Space deal been disclosed, a "reasonable stockholder would have inferred that Extra Space had conducted meaningful due diligence before committing $300 million, and that its participation in the Transaction therefore reflected Extra Space's informed confidence in the value and promise of Jernigan's assets." Cmpl. ¶ 35. Thus, in the light of JCAP's contrary statement about the "limited interest" of other self-storage REITs, a reasonable shareholder likely would consider disclosure of the Extra Space deal important in deciding whether to vote to sell at $17.30 per share. *See Koppel*, 167 F.3d at 131.

5

Defendants' principal argument in their brief is that they had no duty to disclose an "inchoate" deal with Extra Space before that deal closed. Def. Mem. at 3, 13–14. Lead Plaintiff responds that "Defendants are not entitled to the implausible inference that Extra Space's large and complex piece of the Transaction suddenly materialized" between October 26, 20202, when the shareholders voted, and November 6, 2020, when the deal with Extra Space closed. Pl. Opp. 5–6; Cmpl. ¶¶ 9, 26. In both their papers and at the oral argument, Defendants declined to offer any information about the timeline on which the deal with Extra Space developed. Rather, Defendants take the position that a deal is "inchoate," and there is no duty to disclose it until the deal closes. *See* Def. Mem. at 3, 13–14. That is not the law. Rather, a company is required to disclose a "prospective" deal, or negotiations, if the information is material, and whether the information is material depends on, for example, the magnitude of the prospective transaction and how likely it is to come to pass. *See Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988); *Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 430 (S.D.N.Y. 2015); *Otis Elevator Co. v. United Techs. Corp.*, 405 F. Supp. 960, 971 (S.D.N.Y. 1975) (citing *See Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1295 (2d Cir. 1973)) ("The Second Circuit has often indicated that a plan or proposal will not be considered inchoate but rather, that the plan is material if there is strong evidence of its adoption by high corporate officers over a period of time.").

At the pleading stage, Lead Plaintiff is entitled to the reasonable inference that a $300 million deal that closed less than two weeks later, on November 6, 2020, was not "inchoate" on October 26, 2020. *See Wilson*, 671 F.3d at 128. Indeed, the Second Circuit recently reversed the decision to dismiss a securities fraud case about a going-private transaction in part because, the Second Circuit held, the plaintiff was entitled to the inference that a plan to relist the stock later was already in place sixteen months earlier. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19

F.4th 145, 151 (2d Cir. 2021) ("The allegations create a plausible inference that a concrete plan was in place at the time Qihoo issued the Proxy Materials"). Given the far shorter timeline in this case, the Court cannot conclude as a matter of law that the Extra Space deal was not a material omission. *See Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*, 723 F. Supp. 976, 983–84 (S.D.N.Y. 1989).

Defendants further contend that the Extra Space deal was not material because Extra Space might not have invested in JCAP but for its acquisition by NexPoint. Def. Mem. at 16. Thus, Defendants contend, it made no difference to the JCAP stockholders how NexPoint financed its acquisition. *Id*. at 17. These contentions do not support dismissal. Once JCAP expressly stated in its proxy materials that other self-storage REITs had "limited interest" in JCAP's portfolio, Cmpl. ¶ 7, it was misleading to omit that Extra Space was interested, to the tune of $300 million, even if that interest was contingent on the acquisition by NexPoint. Moreover, while Defendants try to paint Extra Space's investment as part of the financing for NexPoint's acquisition, the price of that acquisition was not a foregone conclusion. The issue is whether NexPoint acquired the surviving, private entity for a discount by hiding the interest of a leading self-storage REIT in the assets. The Amended Complaint adequately alleges a material omission.

### B. The Amended Complaint Adequately Pleads Loss Causation

At the oral argument, Defendants' principal argument was that the Amended Complaint fails to plead loss causation, although Defendants devoted only two paragraphs to the issue in their opening brief. Def. Mem. at 24–25. A securities fraud plaintiff must "provide the defendants with notice of what the relevant economic loss might be" and of the "causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *see also Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001) (explaining that

loss causation "has often been described as proximate cause, meaning that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission"). The Amended Complaint alleges that the misleading proxy materials "induced stockholders to vote in favor" of the proposed transaction and that the $17.30 per share price was "inadequate" because the Extra Space deal made the shares "far more valuable." Cmpl. ¶¶ 2, 5, 6. In other words, Lead Plaintiff alleges that the economic loss was the higher price the stockholders would have demanded had they known about the Extra Space deal. *See Koppel*, 167 F.3d at 137; *Baum v. Harman Int'l Indus., Inc.*, 408 F. Supp. 3d 70, 92 (D. Conn. 2019) ("Multiple courts have also found that where, as here, a plaintiff asserts that shareholders were misled into approving an acquisition that undervalued the company, loss causation is adequately alleged.").

Defendants argue these allegations are too speculative. Def. Mem. at 24. Defendants cite *Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021), but that case is clearly different because, there, the plaintiff's own allegations about "what potential buyers in fact offered" contradicted his speculation that the "shares were intrinsically worth" more. *Id.* at 37–38. Aside from *Gray*, Defendants point only to out-of-circuit authority for the proposition that a plaintiff must offer far more specific information about economic loss at the pleading stage. *See Kuebler v. Vectren Corp.*, 13 F.4th 631 (7th Cir. 2021); *In re Resolute Energy Corp. Securities Litigation*, 2022 WL 260059 (3d Cir. Jan. 27, 2022). However, the Second Circuit has cautioned against "reliance on non-binding and out of circuit authority" in the context of a discussion of loss causation for a claim under section 14(a). *See Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*, 2021 WL 5782359, at *4 (2d Cir. Dec. 7, 2021). Here, the Amended Complaint adequately alleges that a lower share price was a "foreseeable consequence" of omitting the Extra Space deal from the proxy disclosures. *Castellano*, 257 F.3d at 186; *see also Baum*, 408 F. Supp.

3d at 92. While Lead Plaintiff might encounter problems proving damages down the road, the Amended Complaint adequately pleads loss causation.

## IV.     CONCLUSION

For the reasons stated above, the Court rejects Defendants' arguments that the Amended Complaint fails to state a claim under Section 14(a) of the Securities Exchange Act of 1934. The Court, therefore, necessarily rejects Defendants' only argument that the Amended Complaint fails to state a claim under Section 20(a). Accordingly, Defendants' motion to dismiss the Amended Complaint is DENIED. The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 43.

The parties shall file a joint letter and proposed Case Management Plan, in accordance with the Court's Individual Rules, by August 15, 2022. The parties shall include a proposed briefing schedule for Lead Plaintiff's motion for class certification.

**SO ORDERED.**

**Date:  August 1, 2022**                                           **MARY KAY VYSKOCIL**
**New York, NY**                                                       **United States District Judge**