UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN R. ERICKSON, individually and on behalf of all others similarly situated,

                Plaintiff,

-against-

JERNIGAN CAPITAL, INC., et al.,

                Defendants.

No. 1:20-cv-09575 (JLR) (KHP)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

    Plaintiff John Erickson ("Plaintiff") brings this putative class action against Defendants Jernigan Capital, Inc., Mark Decker, James Dondero, Howard Silver, Harry Thie, and Rebecca Owen (together, "Defendants"), alleging various violations of federal securities law. *See* ECF No. 36 ("Am. Compl."). Now before the Court is the Report and Recommendation of Magistrate Judge Katharine H. Parker (the "Magistrate Judge"), dated June 12, 2023, addressing Plaintiff's motion for class certification. *See* ECF No. 95 ("R&R"). The Magistrate Judge recommends that Plaintiff's motion for class certification be granted. *Id.* Defendants have filed objections to the R&R, which Plaintiff opposes. *See* ECF Nos. 100 ("Def. Obj."), 101 ("Pl. Opp."). The Court has reviewed all of these submissions. For the reasons set forth below, the Court adopts the R&R in full and certifies the class.

## BACKGROUND

    Jernigan Capital, Inc. ("Jernigan") was a public Real Estate Investment Trust ("REIT") specializing in self-storage real-estate properties that traded on the New York Stock Exchange. R&R at 1. On October 26, 2020, Jernigan's shareholders voted to sell Jernigan to affiliates of NexPoint Advisors, L.P. ("NexPoint") for $900 million, a transaction that took effect on

November 6, 2020 (the "Transaction"). *Id.* The new entity, privately held, is known as NexPoint Storage Partners. *Id.*

Plaintiff filed his Complaint, later amended on April 6, 2021, on behalf of former shareholders of Jernigan common stock who voted to approve the Transaction and sold their shares for $17.30 per share as part of the Transaction. R&R at 2. Asserting claims under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), Plaintiff alleges that the proxy materials ("Proxy") on which shareholders relied when they voted in favor of the Transaction failed to disclose material information that, if known, would have caused them to insist on a higher price for their shares. R&R at 2. In particular, according to Plaintiff, the Proxy did not disclose that Extra Space, a competing REIT operating in the self-storage sector, was participating in the Transaction by providing $300 million in exchange for seats on the new entity's board and rights to Jernigan's properties. *Id.* Plaintiff seeks money damages for this omission, to be calculated as the difference between Jernigan's fair value and the $17.30 per share that shareholders received from the Transaction. Pl. Opp. at 1.

Plaintiff now moves for class certification under Federal Rule of Civil Procedure 23 ("Rule 23"). R&R at 3. The proposed class consists of all shareholders who held Jernigan common stock as of September 11, 2020 – the record date for eligibility to vote on the Transaction – and who ultimately sold their shares for $17.30 each upon close of the Transaction. *Id.* Excluded from the proposed class are Defendants, namely Jernigan's officers and directors, along with their immediate family members and legal representatives, heirs, successors and assigns, and any entity in which Defendants have or had a controlling interest. *Id.*

After the class-certification motion was fully briefed and oral argument was held, the Magistrate Judge recommended granting Plaintiff's motion to certify the class. R&R at 21. The Magistrate Judge concluded that the proposed class satisfied each of the elements required for class certification under Rule 23(a) and (b)(3), focusing on Defendants' Rule 23(a) challenge to Plaintiff's adequacy as a class representative and their Rule 23(b)(3) challenge to Plaintiff's proposed methodology for measuring damages. *See id.* at 5.

First, the Magistrate Judge found that Plaintiff is an adequate class representative, noting that he had demonstrated a commitment to the class through his participation in the litigation and that he possessed enough relevant experience in the industry to supervise the case and class counsel. R&R at 8. That Plaintiff did not negotiate a cap on his counsel's contingency fee, while relevant to the Magistrate Judge's adequacy inquiry, did not disqualify him from serving as lead plaintiff. *Id.* at 9. Nor did the Magistrate Judge agree with Defendants that Plaintiff had "ceded control" of this litigation to his proposed class counsel, or that an error in his declaration about the amount of stock that he held – later corrected – suggested an overall lack of diligence. *Id.* at 10. The Magistrate Judge also noted that Plaintiff's proposed class satisfied the rest of the Rule 23(a) factors. *Id.* at 6-7.

The Magistrate Judge also found that, under Rule 23(b)(3), common issues of liability and damages predominated over individual issues. R&R at 20. As the Magistrate Judge noted, "all of the class members' claims rise and fall on the same Proxy misstatements and omissions and same theory of loss causation and would be measured in a similar way." *Id.* Plaintiff's proposed methods of calculating damages did not upset this conclusion. *Id.* The Magistrate Judge found that Plaintiff's proposed models for measuring damages tracked his claim that a materially false and misleading Proxy "support[ed] a sale price that did not reflect the true value

3

of the Company," allowing the buyer to "purchase it for a discount." *Id.* at 19. Analyzing various Section 14(a) cases, the Magistrate Judge concluded that Plaintiff's proposed theory of damages – and his suggested methodologies to calculate those damages – represented the "typical measure of damages" in such cases. *Id.* at 14. The Magistrate Judge deemed benefit-of-the-bargain damages similarly consistent with Plaintiff's theory of liability because the theory suggests that Defendants hid Extra Space's involvement in the Transaction to extract a bargain price on the stock. *Id.* at 17. As for Defendants' argument that Plaintiff's theory of damages rested on overly speculative assumptions, the Magistrate Judge found it more appropriate to address that issue in the context of a motion for summary judgment rather than in a motion under Rule 23. *Id.* at 18-19.

On July 5, 2023, Defendants objected to portions of the R&R. Def. Obj. On July 19, 2023, Plaintiff filed his opposition to Defendants' objections. Pl. Opp.

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (internal quotation marks and citations

4

omitted). Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation. *See Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020); *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

## DISCUSSION

Rule 23 governs class certification. In addition to satisfying the prerequisites of Rule 23(a), a proposed class must fall into one of three categories described in Rule 23(b) before it can be certified. Fed. R. Civ. P. 23(b); *see Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). Because Plaintiff seeks to certify this class under Rule 23(b)(3), certification requires an additional showing that "common" issues of law or fact "predominate over any questions affecting only individual members," and that a class action is "superior" to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Waggoner*, 875 F.3d at 93 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal citation and quotation marks omitted). "The same analytical principles govern Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). A district court has the "duty to take a 'close look' at whether common questions predominate over individual ones," including whether damages are capable of measurement on a classwide basis. *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "[C]ourts should

examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013) (citing *Comcast*, 569 U.S. at 34-35).

Here, Defendants raise two objections to the R&R, arguing that the Magistrate Judge erred in (1) finding Plaintiff's proposed damages methodology consistent with his theory of liability, and (2) concluding that benefit-of-the-bargain damages are available. Def. Obj. at 8-18. The Court will address each of Defendants' objections in turn.

### A.     First Objection

Defendants first argue that the Magistrate Judge erred in concluding that Plaintiff's damages model is consistent with his theory of liability. Def. Obj. at 1-2. On *de novo* review, the Court agrees with the Magistrate Judge's conclusions, and rejects Defendants' first objection.

When relied upon to certify a class under Rule 23(b)(3), "any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast*, 569 U.S. at 35 (internal quotation marks omitted). In other words, "a model for determining classwide damages . . . must actually measure damages that result from the class's asserted theory of injury." *Roach*, 778 F.3d at 407 (citing *Comcast*, 569 U.S. at 35). Otherwise, such a model "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35. However, damages calculations need not be exact at the class-certification stage. *Id.*; *see Waggoner*, 875 F.3d at 105.

According to Defendants, Plaintiff's theories of damages and liability are "irreconcilable." Def. Obj. at 2. To them, Plaintiff's theory of liability assumes that the Jernigan shareholders – had they known of Extra Space's role in the Transaction – would have voted

6

against it. *Id.* at 11-13. Defendants characterize Plaintiff's damage methodology, by contrast, as one that "assumes that the Transaction closed." *Id.* at 12. *Comcast*, according to Defendants, forecloses such "fundamentally mismatched" theories of damages and liability. *Id.* at 13.

The Court agrees with the Magistrate Judge and Plaintiff that Defendants mischaracterize Plaintiff's theory of liability. *See* R&R at 19; Pl. Opp. at 11-15. As the Magistrate Judge noted, Plaintiff's liability theory is not that, but for Defendants' actions, Jernigan's shareholders would have rejected the Transaction. R&R at 19. Rather, Plaintiff argues that a materially false and misleading Proxy "support[ed] a sale price that did not reflect the true value of the Company." *Id.* Plaintiff has maintained this position throughout this case, clarifying more recently at oral argument that "had stockholders . . . known the true facts of this transaction and Extra Space's role in it, they would have insisted on higher consideration" and "on a modification of this deal." Def. Obj. at 11 (quoting Def. Obj., Ex. A at 4 (May 20, 2022 Tr.)); *see* Am. Compl. ¶¶ 2, 5, 6. The Court declines to narrowly read Plaintiff's statement that Jernigan's shareholders "would not have voted in favor of this deal," which does not by itself suggest that they would have rejected any version of the Transaction wholesale. Def. Obj. at 11-12. The context of Plaintiff's immediately preceding statements – and, indeed, the entire thrust of his pleadings – confirms Plaintiff's liability theory.

The relevant question, then, is whether Plaintiff's theory would "actually measure damages" caused by the conduct that it claims should not have occurred. *Roach*, 778 F.3d at 407. Plaintiff's theory of damages – namely, that they amount to the difference between Jernigan's fair value and the Transaction's $17.30 per share consideration – is consistent with Plaintiff's argument that the Proxy thwarted a sale price reflecting that higher value. According to Plaintiff, the Proxy harmed the proposed class by enabling Defendants to extract a lower

7

purchase price for the Transaction. R&R at 18. Plaintiff's proposed damages "is consistent with [that] liability case." *Comcast*, 569 U.S. at 35. That Plaintiff offers different methods of quantifying Jernigan's fair value, does not foreclose a predominance finding at this juncture. To conclude otherwise would require something close to an exact calculation of damages that is premature at the certification stage. *See Comcast*, 569 U.S. at 35. Damages "will be proved, if proved, by common evidence." R&R at 19 (citing *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99-100 (S.D.N.Y. 2015)).

The Court similarly rejects Defendants' footnoted assertion that the Magistrate Judge failed to consider in her predominance analysis the "range of stockholder-specific factors that would have to be accounted for in a hypothetical, post-rejection world." Def. Obj. at 16 n.12. Such a world is of Defendants' own making. As discussed above, Plaintiff does not argue that the class first had to vote down the Transaction before negotiating for a higher stock price. In any case, none of Defendants' scenarios explain why class members would find themselves in different positions as to the calculation of damages.

### B. Second Objection

Defendants also argue that the Magistrate Judge erred in finding that benefit-of-the-bargain damages are available. Def. Obj. at 17-18. The Court agrees, after *de novo* review, with the Magistrate Judge that Plaintiff could seek to recover such damages as an alternative to out-of-pocket damages. *See* R&R at 16-17.

Benefit-of-the-bargain damages are available only if they can be established with "reasonable certainty." *Osofsky v. Zipf*, 645 F.2d 107, 114 (2d Cir. 1981). Under Section 14(a), "plaintiffs are entitled to recover damages equivalent to the benefit of the bargain they would have obtained had full disclosure been made." *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987,

996 (2d Cir. 1988). Plaintiff can receive benefit-of-the-bargain damages if he can show, as he alleges, that the class members did not receive the true value of their shares at the time of the Transaction. As the Magistrate Judge explained, Plaintiff argues in part that the Proxy failed to disclose that Jernigan's directors themselves valued the company at a higher price per share than was listed. R&R at 17. Such claims, if proved, may establish the "reasonable certainty" required for benefit-of-the-bargain damages. *Osofsky*, 645 F.2d at 114.

Defendants' attempts to distinguish *Wilson* are unpersuasive. *See* Def. Obj. at 17-18. Although *Wilson* involved proof of fraud, which Plaintiff does not assert in this case, more complete discovery may yet find that Defendants' conduct extended beyond negligence to fraud. *See* 855 F.2d at 996. As the Magistrate Judge noted, Plaintiff's benefit-of-the-bargain argument is "premised in part on proof that Extra Space's involvement was known prior to the vote on the acquisition and not disclosed." R&R at 17. Nor is *Wilson* inconsistent with Second Circuit precedent. *See* Def. Obj. at 17 (citing *Osofsky*, 645 F.2d at 114). *Osofsky* ordered benefit-of-the-bargain damages in a case involving misrepresentation in the proxy materials "as to the consideration to be forthcoming upon an intended merger," but did not limit such damages only to that situation. 645 F.2d at 114.

Finally, the Court disagrees with Defendants' assertion that Plaintiff has failed to advance a methodology for calculating such damages on a classwide basis. Def. Obj. at 18. Determining benefit-of-the-bargain damages has "include[d] a valuation of [the company's] future earning power, viewed prospectively from the date of the merger." *Wilson*, 855 F.3d at 966. It is plain, then, that measuring these damages would "appl[y] equally to all shareholders regardless of the number of shares they held." R&R at 20. The Court is satisfied that benefit-of-the-bargain

damages can be measured on a classwide basis in this case and satisfy Rule 23(b)(3) predominance.

## CONCLUSION

For the foregoing reasons and, having concluded that there is no clear error in the parts of the R&R to which the parties did not object, the Court adopts the R&R in full and grants the motion to certify the class.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 76.

Dated: September 14, 2023
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge