UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re JERNIGAN CAPITAL, INC. SECURITIES LITIGATION

: Master File No. 1:20-cv-09575-JLR
:
: <u>CLASS ACTION</u>
:
:
:
:
:
:
:

------------------------------------------------------x

### STIPULATION AND ORDER GOVERNING THE PRODUCTION <u>OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION</u>

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiff John R. Erickson ("Plaintiff") and Defendants Jernigan Capital, Inc., John A. Good, Mark O. Decker, James Dondero, Howard A. Silver, Harry J. Thie, and Rebecca Owen ("Defendants" and, together with Plaintiff, the "Parties"), that this Stipulation and Order Governing the Production of Documents and Electronically Stored Information ("ESI") (the "Document Production and ESI Stipulation") will facilitate, and govern how the Parties manage, discovery in the above-captioned case, including the production of hard copy documents and ESI.

I. **PRESERVATION**

The Parties acknowledge that they are obligated to take reasonable steps to preserve discoverable information in the Party's possession, custody, or control. ESI will be collected in a manner that preserves all reasonably available metadata. The Parties agree that data, including discovery material protected by the Protective Order entered by the Court on October 20, 2023 (ECF No. 109) ("Protected Material") in this action, shall be preserved for only the time for which this litigation or any appeals therefrom is pending. All Protected Material shall be destroyed at the completion of this litigation, including all possible appeals.

4853-6558-7340.v2

The Parties agree that the following categories of ESI generally need not be preserved in this case:

(1) "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(2) random access memory (RAM);

(3) on-line access data such as temporary internet files, history, cache, cookies, etc.;

(4) data in metadata fields that are frequently updated automatically, such as last-opened dates; and

(5) backup data that is substantially duplicative of data that is more accessible elsewhere.

## II.   IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall meet and confer in good faith to come to an agreement on search and culling methods used to identify responsive information in their possession, custody, or control. The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, search terms, technology-assisted review, predictive coding, or any additional proposed method to cull documents and the collection and production of short message format communications such as those from mobile devices or collaborative tools (e.g., text messages, WhatsApp, Slack, Teams, G-Chat, etc.), and agree to comply with the provisions set forth in any agreed-upon search protocol. The Parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.   Sources

The Parties will disclose (e.g., identify and describe) all custodial and non-custodial data sources likely to contain responsive information and the Parties will discuss these sources. The

Parties will identify and describe sources likely to contain responsive information that a Party asserts should not be searched or are not reasonably accessible and will explain the reasons for such assertions. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and shall meet and confer regarding such request.

**B.  Identification of Custodians**

The Parties agree to meet and confer regarding the identification of custodians whose files are likely to contain documents and ESI relating to the subject matter of this litigation.

**C.  Easily Targeted Responsive Documents**

Documents and categories of documents that are relevant to this action and responsive to a Party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a Party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (e.g., analytics, predictive coding, technology-assisted review). The producing Party will indicate which categories of documents and data sources will be produced with and without the use of search terms or other advanced search methodology.

**D.  Search Terms**

The Parties will meet and confer and negotiate in good faith regarding the use of search terms and will use best efforts to timely reach agreement on search terms.

The producing Party shall provide the receiving Party with information on hits generated by the proposed search terms in order for the Parties to better assess the volume and efficacy of the proposed terms. At the request of either the producing or receiving Party, the producing Party will provide a search term hit report on all proposed terms to be used for search term discussions.

The search term hit report will be generated after global de-duplication and include the number of documents that hit on each proposed term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families.  In the event that a proposed term is generating an unreasonable number of nonresponsive documents or is not generating a reasonable number of responsive documents, the Parties shall use good faith efforts to identify alternative terms.  The mere fact that a document hits on or is captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.  Nor does the fact that a document does not hit on a search term mean that a document is not responsive to any propounded discovery request or otherwise relevant to the litigation.

   E.  **Technology-Assisted-Review**

No Party shall use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

**III.**  **PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original

document contains color, and the color is necessary to understand the meaning or content of the document, then the receiving Party can request re-production of the document in color format. Documents re-produced in color shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.   PRODUCTION OF ESI

### A.   Format

Except where otherwise noted in this section, the Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes in the metadata shall be produced in native format. The Parties shall meet and confer on the appropriate metadata fields and format of production for short message communications (e.g., text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.), if applicable. If an original document being produced in image format contains color, and the color is necessary to understand the meaning or content of the document, then the receiving Party can request re-production of the document in color format. Documents re-produced in color should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the

usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith on production format options.

**B.    De-Duplication**

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document. Should the CUSTODIAN-ALL metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents will be produced prior to substantial completion of the document production. If, after receiving a

production, a receiving Party determines that it needs FILEPATH-DUP metadata information, the producing Party will provide this metadata field.  Requests for the production of FILEPATH-DUP information will not be unreasonably denied.

### C. Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  Metadata that contains privileged or work product information may be redacted and identified in a privilege log.

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, Google Docs, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

### D. Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E. Attachments

The Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege.  Attachments will be produced sequentially after the parent email.  The Parties shall make reasonable efforts to collect and produce point-in-time documents that are links in documents and emails, including, but not limited to, Google G Suite, Microsoft 365, etc., where technically feasible.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship, to the extent it is technically

feasible to do so. To the extent a receiving Party receives a document production that contains point-in-time links and that does not also include the linked documents, the Parties agree to promptly meet and confer to discuss supplementing the production with the same. Nothing in this Stipulation will require the production of privileged links or attached documents.

    **F.**    **Compressed Files Types**

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

    **G.**    **Bates Numbering.**

All ESI and hard-copy documents that a Party produces in TIFF or JPG format shall be electronically branded with a legible, unique Bates number on each page, but the Bates number should not be included in the extracted text of ESI. The Bates number shall: (1) identify the producing Party; (2) maintain a constant length of numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters and dashes, no special characters or embedded spaces; and (4) be sequential within a given document. If the Bates number conceals, interferes with, or otherwise obscures any information from the source document, the producing Party, at the request of the receiving Party, shall produce a copy that is not so obscured. Each TIFF/JPG file shall be named with the same page-level Bates number branded on the underlying image.

    **H.**    **Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic

file.

### I. Exceptions

The producing Party shall take all reasonable steps to identify and resolve any exceptions identified during the review and processing of its data.

### J. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

## V. PRIVILEGE AND REDACTION

To the extent a Party determines to withhold or redact a document on the basis of the attorney-client privilege, attorney work product doctrine, or any other recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the Party shall provide a log, treating each document withheld or redacted for Privilege from that production separately, and shall provide information sufficient to allow the receiving Party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection. Privilege logs shall be provided in Excel format.

For each document withheld on the basis of Privilege, the Parties agree to include the following information on a privilege log:

a. the Bates-number range for produced documents that are partially redacted for Privilege or a numerical identifier for documents entirely withheld on the basis of Privilege;

b. the title or email subject of the document, unless its disclosure will disclose information protected by the Privilege;

c. type of document;

   d. a description of the nature of the information not produced or disclosed to enable other parties to assess the claim, in accordance with Fed. R. Civ. P. 26(b)(5)(A)(ii);

   e. the name(s) of the person(s) who created the document;

   f. the name(s) of the person(s) who received the document, if known;

   g. the date of the document; and

   h. the basis for the claim that the document is privileged or protected (e.g., "Attorney-Client Privilege," "Work Product").

The privilege log shall identify which individuals on the privilege log are attorneys.

The inadvertent production of Protected Material shall be governed by the Protective Order entered by the Court on October 20, 2023 (ECF No. 109).

### A. Redactions

A Party may redact information subject to a valid claim of Privilege or in accordance with the Parties' forthcoming Protective Order. To the extent that any document contains information that has been redacted for privilege, it shall be produced in the form of a redacted TIFF image. Documents redacted for privilege shall be logged in the manner set forth above. If documents that the Parties have agreed to produce in native format need to be redacted, the Parties will implement redactions while ensuring that proper formatting and usability are maintained. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format. Redactions of responsive documents for relevance are presumptively impermissible. The Parties, however, may redact personally identifiable information (e.g., social security numbers, financial account numbers, etc.) and any irrelevant information of a personal or intimate nature regarding any individual. The Parties should indicate the basis of each redaction on the face of the produced document.

## VI. DISPUTES

The Parties shall meet and confer in good faith to resolve any issues regarding the production of hard copy documents and ESI prior to seeking Court intervention.

## VII. MISCELLANEOUS

### A. Variance

Any of the provisions set forth herein may be modified by written agreement of the Parties or by the Court where good cause is shown.

**SO ORDERED.**

Dated: November 9, 2023

*Jennifer Rochon*
**Hon. Jennifer L. Rochon**
**United States District Judge**

DATED: November 9, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL
DESIREE CUMMINGS
JONATHAN ZWEIG

          */s/ Noam Mandel*
NOAM MANDEL
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com

*Lead Counsel for the Class*

WINSTON & STRAWN LLP
MATTHEW L. DIRISIO
JAMES P. SMITH


        */s/ Matthew L. DiRisio*
        MATTHEW L. DIRISIO

200 Park Avenue
New York, NY 10166
Telephone: 212/294-6700
mdirisio@winston.com
jpsmith@winston.com


*Counsel for Defendants Jernigan Capital, Inc., John A. Good, Mark O. Decker, James Dondero, Howard A. Silver, Harry J. Thie and Rebecca Owen*

# TABLE 1 - METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| DOCUMENT TYPE | | An indication of the type of document. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.